JUDGE DAVID BRIONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

FILED
2018 FEB -6 PM 3: 14

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Petitioner, | ) VERIFIED COMPLAINT |
| | ) |
| v. | ) CIVIL NO. |
| | ) |
| ANY AND ALL CONTENTS OF SEP | ) |
| IRA LPL FINANCIAL ACCOUNT | ) |
| NUMBER 74664387, HELD IN THE | ) **EP18 CV0045** |
| NAME OF CHARLIE T. SONG, AND | ) |
| ANY AND ALL PROPERTY | ) |
| TRACEABLE THERETO, | ) |
| | ) |
| Respondent. | ) |

## VERIFIED COMPLAINT FOR FORFEITURE

Comes now Petitioner United States of America, acting by and through the United States

Attorney for the Western District of Texas and the undersigned Assistant United States Attorney,

pursuant to Rule G, Supplemental Rules of Federal Rules of Civil Procedure, and respectfully

states as follows:

### I.
### NATURE OF THE ACTION

1.     This action is brought by the United States of America seeking forfeiture to the

United States, pursuant to 18 U.S.C. §§ 981(a)(1)(A) and (C), of the property described below:

> **Any and all contents of SEP IRA, LPL Financial Account No. 74664387, held**
> **in the name of Charlie T. Song, and any and all property traceable thereto**

(hereinafter, the "Respondent Property").

2.     The Respondent Property is subject to seizure and forfeiture pursuant to 18 U.S.C.

§ 981(a)(1)(C), as property constituting and derived from proceeds traceable to violations of 18

U.S.C. §§ 1343 (wire fraud), 1347 (health care fraud), and a conspiracy to commit those offenses.

The Respondent Property is also subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A), as property involved in violations of 18 U.S.C. §§ 1956 and 1957, and as property traceable to such property.

**II.**
**STATUTORY BASES FOR FORFEITURE**

3.      The statutory provisions pursuant to which the Respondent Property is subject to seizure and forfeiture are set forth below.

**Proceeds of Specified Unlawful Activity**
**18 U.S.C. § 981(a)(1)(C)**

4.      Title 18, United States Code, Section 981(a)(1)(C) subjects to forfeiture "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to a violation of . . . any offense constituting 'specified unlawful activity' (as defined in section 1956(c)(7) of [18 U.S.C. § 1956(c)(7)], or a conspiracy to commit such offense."

5.      "Specified unlawful activity" is defined in 18 U.S.C. § 1956(c)(7), and the term includes any offense under 18 U.S.C. § 1961(1).  Section 1961(1) lists as offenses, among other things, any act which is indictable under 18 U.S.C. § 1343 (relating to wire fraud).

6.      Pursuant to 18 U.S.C. § 1956(c)(7)(F), the term "specified unlawful activity" also means any act constituting an offense involving a "Federal health care offense." The term "Federal health care offense" includes, among other offenses, a violation of, or conspiracy to violate, 18 U.S.C. § 1347, as well as a violation of, or conspiracy to violate, 18 U.S.C. §§ 1343 and 1349, if the violation or conspiracy relates to a health care benefit program. *See* 18 U.S.C. § 24.

2

7.     Because the Respondent Property constitutes and was derived from proceeds traceable to violations of 18 U.S.C. §§ 1343 (wire fraud), 1347 (health care fraud), and a conspiracy to commit those offenses, the Respondent Property is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C).  The Respondent Property is also subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) as property involved in violations of 18 U.S.C. §§ 1956 and 1957, and as property traceable to such property.

### III.
### JURISDICTION AND VENUE

8.     Under 28 U.S.C. § 1345, this Court has jurisdiction over an action commenced by the United States, and under 28 U.S.C. § 1355(a), jurisdiction over an action for forfeiture.  Venue is proper in this district pursuant to 28 U.S.C. § 1355(b)(1), because acts or omissions giving rise to the forfeiture occurred in this District.

### IV.

### FACTS IN SUPPORT OF FORFEITURE

9.     On or about January 9, 2015, Charlie SONG (SONG) pled guilty, pursuant to a written plea agreement with the Government, to a one-count Information, EP-14-CR-0213 (ECF No. 274), charging him with a violation of 18 U.S.C. §§ 208 and 2, Aiding and Abetting Acts Affecting a Personal Financial Interest.

10.     In the "Forfeiture of Property" section of his plea agreement, SONG did not dispute the forfeitability of, *inter alia,* the following pursuant to 18 U.S.C. § 981(a)(1) and 28 U.S.C. § 2461(c):

a.     Any and all contents of Fidelity Investments SEP IRA Account No. 647-748692,

held in the name of Charlie T. Song, and all funds traceable thereto, including but not limited to funds on deposit in LPL Account No. 74664387.

11.     In addition, SONG agreed, in his plea agreement, not to file a claim or a petition for remission or mitigation in any forfeiture proceedings involving the above-listed property (including any civil administrative, civil judicial, and criminal judicial proceedings), and he further agreed not to cause or assist anyone else in doing so. SONG also agreed to waive any right to notice of any forfeiture proceedings involving the property.

12.     In his plea agreement, SONG further admitted, in substance and in part, that the facts set forth in paragraphs 13 through 22 below are true and correct.

13.     Between in or about March 2002 through in or about August 2010, SONG, who was the father-in-law of Richard Craig Rooney (Rooney), resided with Rooney at his homes in the Western District of Texas. Rooney was a medical command officer in the United States Army assigned to practice orthopedic medicine at U.S. Army medical facilities. The U.S. Army is an agency of the Executive Branch of the U.S. Government.

14.     From sometime in 2002 until June of 2005, Rooney was assigned to work at Carl R. Darnall Army Medical Center (CRDAMC) at Ft. Hood, Texas, the Western District of Texas. From June 2005 until June 2010, Rooney was assigned to work at William Beaumont Army Medical Center (WBAMC) at Ft. Bliss, Texas, the Western District of Texas.

15.     During Rooney's tenure at CRDAMC, on February 8, 2005, Rooney, on behalf of SONG, created a Texas limited liability company called Chasong. The address for Chasong was the home of Rooney in Killeen, Texas. SONG was the only member and manager of Chasong. To assist Rooney in obtaining remuneration from Altiva and other medical device companies, SONG

4

used Chasong ostensibly as a sales company or distributorship of medical supplies. On February 1, 2005, SONG entered into the Altiva Corporation Non-Exclusive Sales Agency Agreement appointing Chasong as the sales representative for Altiva products at CRDAMC at Ft. Hood, Texas.

16.     While it appeared that SONG was the sales representative, in truth and in fact, Rooney acted as his own representative for Altiva, performing the traditional functions of a medical device distributor including receiving the devices from Altiva shipped to his home, transporting those devices for sterilization to CRDAMC, and negotiating with Altiva for the Chasong Commission. SONG received commission payments from Altiva, deposited them in his Chasong bank account and shared some of the proceeds with Rooney.

17.     Beginning in 2005 and continuing through and including June 2010, Rooney was employed by two medical device development and sales companies as a consultant regarding the efficacy of existing medical devices and the design development and marketing of prospective medical devices.

18.     In 2005, Rooney entered into two agreements with Altiva: 1) as a member of the Altiva Medical Advisory Panel (MAP), under the name of Spondylos Consulting, LLC, for the purpose of advising Altiva regarding research, development, manufacturing and marketing of spinal devices and related products, and 2) as a member of the Altiva Team Development Agreement to provide bona fide services related to the Comprehensive Spine Stabilization System.

19.     Both agreements provided for compensation including money, stock options and royalties, some of which were based on a percentage of the net sales of product implants and instruments created with Rooney's assistance at Altiva.

20.     In March of 2008, Julia Eller (Eller) created her own medical device company, Allure Spine.  On July 11, 2008, Eller entered into an IP (Intellectual Property) Development Agreement ostensibly with Spondylos, but in actuality, with Rooney.  The IP Holder Agreement was a conduit to disguise the fact that Eller and Allure were paying Rooney "royalties," for the sale of products he assisted in designing.

21.     During the time Rooney was receiving money from both Altiva and Allure as a result of his agreement with them, he was also recommending that CRDAMC and WBAMC purchase Altiva and Allure products for his use in surgical procedures at the two hospitals.  At the time Rooney was making the decisions to use Altiva and Allure products and was recommending the two military hospitals contract with Altiva and Allure to purchase said products, Rooney had an undisclosed financial interest in Altiva and Allure products.

22.     In his plea agreement, SONG further admitted that he aided and abetted Rooney, when Rooney participated personally and substantially as a government employee in making the decision and recommendation for CRDAMC and WBAMC to contract with Altiva to purchase spinal implants and instruments for his use as a physician when he knew he had a financial interest in the products recommended.

## The Respondent Property

23.     A business economy checking account ending in 0370 was held at Bank of America in the name of Chasong Enterprises, LLC (the "0370 Account").   Bank records for the 0370 Account show the deposit of at least approximately $1.1 million of commissions from Altiva into the account, from on or about June 13, 2005 through in or about October 26, 2007.   The records do not show deposits from any other sources during this time, with the exception of a single $50 deposit.

24.     An analysis by the United States Department of Defense Criminal Investigative Service ("DCIS") of records for Chasong's business account (the 0370 Account) shows that at least approximately $783,980 was transferred from this account into a personal checking account, ending in 8375, held at Bank of America in the names of Charlie Song and Mal Song (the "8375 Account"), from on or about July 21, 2005 through on or about February 19, 2008.

25.     Records for Charlie Song's personal checking account (the 8375 Account) show that at least five checks were issued from the account totaling approximately $106,000, between on or about January 24, 2006 and on or about September 18, 2007.  Four of the checks were payable to WM Group of Funds and one check was payable to Principal Funds.  Funds from these five checks were deposited into Charlie Song's SEP IRA Account No. 25386657, as follows:

**Payments to Charlie Song SEP IRA Account No. 25386657 from
Charlie Song's Personal Checking Account (the 8375 Account)**

| Check No. | Check Date | Date Cleared | Amount | Payee | Memo |
|---|---|---|---|---|---|
| 2430 | 01/09/06 | 01/24/06 | $41,000.00 | WM Group of Fund | 2005 MTNE SEP IRA FBOAccountNo#25386 657 |
| 2449 | 04/06/06 | 04/18/06 | $1,000.00 | WM Group of Fund | SEP IRA Acct #25386657 |
| 2517 | 12/22/06 | 12/29/06 | $42,000.00 | WM Group of Funds | Account #25386657 |
| 2550 | 04/10/07 | 04/20/07 | $2,000.00 | WM Group of Funds | Account #25386657 |
| 2588 | 09/10/07 | 09/18/07 | $20,000.00 | Principal Funds | SEP IRA #25386657 |
| **TOTAL** | | | **$106,000.00** | | |

26.     The five checks listed above, which were used to fund SONG's SEP IRA Account

No. 25386657, were processed shortly after funds from Chasong's business account (the 0370

Account) were deposited into Charlie Song's personal checking account (the 8375 Account), as

follows:

**Deposits into Charlie Song's Personal Checking Account (the 8375 Account) from
Chasong's business account (the 0370 Account)**

| Date of Deposit | Amount of Deposit |
|---|---|
| 01/09/06 | $60,000.00 |
| 04/07/06 | $5,000.00 |
| 12/22/06 | $61,600.00 |
| 04/06/07 | $65,000.00 |
| 08/31/07 | $33,000.00 |
| **Total** | **$224,600.00** |

27.     The SEP IRA Account No. 25386657 was opened by in 2004.  In 2004, $40,000

was deposited into this account, in addition to the $106,000 outlined in paragraph 25 above.  No

8

other funds were deposited into SEP IRA Account No. 25386657, apart from earnings on the account.

28.     Funds from SEP IRA Account No. 25386657 were rolled over into Fidelity Investments SEP IRA Account No. 647-748692. No other funds were deposited into Fidelity Investments SEP IRA Account No. 647-748692, apart from earnings on the account.

29.     Three checks dated March 30, 2011, totaling $166,443.16, were issued by Principal Funds to roll over SONG's three SEP IRA funds into Fidelity Investments SEP IRA fund Account No. 647-748692, as follows:

SAM Conservative Growth (A)
sAccount #25386657; Check #1575960 dated 03/30/2011 in the amount of $21,358.05

SAM Conservative Growth (B)
Account #25386657; Check #1576017 dated 03/30/2011 in the amount of $100,709.73

SAM Conservative Growth (C)
Account #25386657; Check #1576042 dated 03/30/2011 in the amount of $44,375.38

30.     The balance of Fidelity Investments SEP IRA Account No. 647-748692 as of January 31, 2014 was $173,227.26.

31.     On January 9, 2015, a representative of National Financial Services, LLP, the carrier of Fidelity Investments Account No. 647-748692, advised DCIS that the funds from said Fidelity Investments account had been transferred to another investment company. Counsel for SONG advised the Government that the Fidelity Investments account funds had been transferred to an account held with LPL Financial.

32.     On January 21, 2015, DCIS contacted a representative of LPL Financial, who confirmed that LPL Financial Account No. 74664387 in the name of Charlie T. Song had been

opened in February 2014.  In March 2014, approximately $170,000.00 was deposited into LPL

Financial Account No. 74664387.  These funds remain in the account as of February 6, 2018.

## V.
## PRAYER

WHEREFORE, Petitioner, United States of America, prays that due process issue to

enforce the forfeiture of the Respondent Property, that due notice pursuant to Rule G(4) be given

to all interested parties to appear and show cause why forfeiture should not be decreed,[1] that a

warrant for an arrest *in rem* be ordered, that the Respondent Property be forfeited to the United

States of America, that the Respondent Property be disposed of in accordance with the law, and

for any such further relief as this Honorable Court deems just and proper.


Dated: February 6, 2018
       El Paso, Texas


                                        Respectfully submitted,

                                        JOHN F. BASH
                                        United States Attorney for the
                                        Western District of Texas

                            By:         _____
                                        Anna E. Arreola
                                        Assistant United States Attorney
                                        New York Registration No. 4151775
                                        700 E. San Antonio Ave., Suite 200
                                        El Paso, Texas 79901
                                        Tel.: (915) 534-6884
                                        Fax: (915) 534-3461

---

[1]     Appendix A, which is being filed along with this complaint, will be sent to those known
by the United States to have an alleged interest in the Respondent Property.


10

# VERIFICATION

STATE OF TEXAS )
)
COUNTY OF EL PASO )

Special Agent Victor Rodriguez declares and says that:

1.      I am a Special Agent with the U.S. Department of Defense, Defense Criminal Investigative Service ("DCIS").

2.      I have read the above Verified Complaint for Forfeiture and know the contents thereof.  The allegations contained in the Verified Complaint for Forfeiture are true and correct to the best of my knowledge, information, and belief.  The sources of my information and the grounds for my belief include my personal involvement in the investigation, official records and files of the United States, and conversations with and documents prepared by law enforcement officers and others.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the 6 day of February, 2018.

Special Agent Victor Rodriguez
U.S. Department of Defense,
Defense Criminal Investigative Service